UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>KING CENTER CORP., an unincorporated company/business association,<br><br>Debtor. | Chapter 11<br><br>Case No. 1-15-44165 |

### DECLARATION OF BENJAMIN GOLDSTEIN PURSUANT TO LOCAL BANKRUPTCY RULE 1007-4 AND IN SUPPORT OF THE DEBTOR'S CHAPTER 11 PETITION

I, Benjamin Goldstein, declare, pursuant to 28 U.S.C. §1746, under penalty of perjury, as follows:

1. I am the Secretary-Treasurer of King Center Corp., an unincorporated company/business association (the "**Debtor**"), and submit this Declaration pursuant to Local Bankruptcy Rule 1007-4 in support of the Debtor's chapter 11 petition.

2. I attended Yeshiva University and Brooklyn College. In 1986, while I was still in college, I started working at Fesco Distributors ("**Fesco**"), a distributor of branded consumer electronics. I am currently and have been the Chief Executive Officer of Fesco for the past fifteen years. I also have been an investor in real estate for the past twenty-five years.

3. Except as otherwise indicated, all statements in this Declaration are based upon my personal knowledge of, and familiarity with Debtor's business and certain financial records and my discussions with the two other owners of the business. If called to testify, I would testify to the facts set forth in this Declaration and that I am authorized to submit this Declaration of behalf of the Debtor.

# I.
# INTRODUCTION

4. On the date hereof (the "**Petition Date**"), the Debtor commenced its chapter 11 case by filing a voluntary petition for relief under title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "**Bankruptcy Code**"), in this Court.

5. The Debtor continues to operate its business and manage its property as a debtor-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed.

6. Section II of this Declaration provides a general overview of the Debtor's business and the circumstances leading up to the commencement of this chapter 11 case. Section III sets forth the information required by Local Bankruptcy Rule 1007-4. As described below, this case has been filed to correct a manifest injustice resulting from the City of Middletown's (the "**City**" or "**Middletown**") seizure and *in rem* foreclosure of the Property, which was worth approximately $1 million, to satisfy a mere $31,730.28 real estate tax bill. The windfall the City obtained by seizing the Property worth more than thirty times the amount of the tax lien cannot be justified.

# II.
# NATURE OF DEBTOR'S BUSINESS AND CIRCUMSTANCES LEADING TO THE COMMENCEMENT OF THE CHAPTER 11 CASE

A.  **Overview of the Debtor and the Property**

7. The Debtor was formed by Abraham Mendlowitz ("**Mendlowitz**") in 2001 to acquire and take title to the property known as 11-15 King Street, Middletown, New York (the "**Property**"). The Property is a 4-story office building, with retail store space

on the ground floor, an improved elevator lobby and three floors of office space located in a prime downtown Middletown location.

8. On November 19, 2001, Stephen J. Ecker delivered a deed to the Property to the Debtor in consideration of the $600,000 purchase price.[1] At the time of the acquisition of the Property from Ecker, Mendlowitz was the sole owner of the Debtor. The next day an affiliate of the Debtor, 11 King Street Corp. ("**11 King**") was incorporated under New York law by Mendlowitz to take title to the Property; however, either through error or inadvertence, the deed was never corrected to indicate that 11 King was the owner of the Property instead of the Debtor. Because Mendlowitz had assumed (incorrectly) that 11 King was the entity that had title to the Property, 11 King, operated and managed the Property until the City seized it in October 2010.

9. Over the years, portions of the Property have been leased to entities such as Pius XII Young and Family Services, the Legal Aid Society and the Restorative Management Corporation, a drug rehabilitation agency, and the Middletown Press. In or about 2005, Emerich Goldstein, my father, and I each acquired from Mendlowitz a twenty-five percent interest in the Debtor and 11 King.

10. In 2009 and thereafter, owing to the need to make renovations, among other things, the Property was largely empty. To fund the improvements and renovations to the Property, the Debtor borrowed $500,000 in principal amount from David Pfeifer ("**Pfeifer**") pursuant to a mortgage dated June 1, 2009. The mortgage loan bears interest at the rate of 6% per annum and late fees of 2%. The mortgage loan was personally

---

[1] The deed was recorded in the Orange County Clerk's office on December 7, 2001.

guaranteed by Emerich Goldstein and Mendlowitz in the amount of $470,000. Although the mortgage was never recorded, it remains a valid unsecured obligation of the Debtor.

**B.    The Tax Default Notices and The *In Rem* Foreclosure**

11.    By letter dated September 10, 2009 (the "**Sept. 2009 Letter**") addressed to the Debtor, King Center Corp., the City advised the Debtor of the existence of a delinquent tax, water and/or miscellaneous lien on the Premises, which the City proposed to sell to a third party, American Tax Funding, LLC. The City's letter also advised that in accordance with its municipal charter, the Debtor had two years from October 30, 2009 to redeem the property by paying the tax lien in full. The Sept. 2009 Letter did not specify the precise nature of the delinquent tax obligations, the tax year or years to which they applied, or their amounts.

12.    Subsequently, by letter dated March 5, 2010 (the "**March 2010 Letter**"), the City advised the Debtor, as the Sept. 2009 Letter had, that there were unpaid taxes, assessments or liens owed to the City, and that if they were not paid by July 1, 2010, the City would convey the Property to the City on or after July 1, 2010. Like the prior Sept. 2009 Letter, this letter did not specify the tax obligations that were outstanding, the tax year or years to which they applied.

13.    On May 28, 2010 (the "**May 2010 Letter**"), the City again wrote to the Debtor. But this time it advised, for the first time, that school and city taxes and water and sewer rents from 2009 existed against the Property in the aggregate amount of $37,617.55, that on July 1, 2010, those liens will have been delinquent for two years, and that under the City's Charter, the City would deed the Property to itself if full payment was not made by July 30, 2010.

14.  These three letters were obviously inconsistent as to the date by which the tax liens had to be satisfied. Mendlowitz, the Debtor's President at the time who was in charge of managing the Property, believed that the Sept. 2009 Letter, which clearly apprised the Debtor that it must pay all delinquent liens by October 30, 2011 to avoid the loss of the Property, was the controlling letter and that he had until October 30, 2011 to pay any delinquencies.

15.  Unknown to the Debtor or Mendlowitz (who did not reside or work in Middletown), Middletown amended its Charter by enacting Local Law One of 2008, which created a new process for properties in Middletown that were delinquent on taxes or assessments. Local Law One of 2008 took effect with taxes, liens and assessments carrying a lien date starting June 30, 2008, whereas, according to the City's counsel, the Sept. 2009 Letter covered liens in effect prior to the effective date of Local Law One of 2008. Consequently, though the Debtor received no notice of the change in Charter provisions, and none of the letters from the City disclosed such a change, the City later claimed that the earlier deadlines of July 1, 2010, and July 30, 2010 (which were stated in the March 2010 Letter and May 2010 Letter) applied to entirely different, more recent liens than the Sept. 2009 Letter, and that these deadlines in effect superseded the October 30, 2011 deadline contained in the first correspondence from the City to the Debtor.

16.  Unfortunately, Mendlowitz did not realize that the October 30, 2011 deadline contained in the September 2009 Letter had in effect become meaningless.

17.  Accordingly, when Mendlowitz arrived at the City's offices in 2010 to redeem the Property from foreclosure by paying the liens, he was advised that the City had already conveyed the Property to itself by a Quitclaim Deed dated October 22, 2010.

Subsequent attempts to persuade Middletown to accept full payment of the delinquent liens failed.

### C. The State Court Proceedings

18. By Summons and Complaint dated March 15, 2011 ("**Action #1**"), 11 King sued the City in the Supreme Court, Orange County ("**State Court**") seeking (i) a declaratory judgment that 11 King was the equitable and legal owner of the Property, because it had paid the consideration to acquire the Property and that the Property could not be transferred to the Debtor as it was not incorporated and therefore not a legal entity, (ii) a declaratory judgment to reform the deed due to a scrivener's error because the seller of the Property intended 11 King to be the grantee in the deed and not the Debtor, (iii) a declaratory judgment that the 11 King should be able to redeem the property because the City should be estopped from denying that the redemption deadline contained in the September 2009 Letter -- **October 30, 2011**, was superseded by subsequent notices, and (iv) a permanent injunction City preventing the City from transferring or hypothecating the Property.

19. On October 18, 2011, 11 King filed another action in State Court ("**Action #2**") which was substantially similar to Action #1, except that Pfeifer was added as a plaintiff to include a cause of action to set aside the City's seizure and conveyance of the Property as a fraudulent conveyance under New York's Debtor and Creditor Law.[2]

20. On March 16, 2012, the State Court granted the City's motion to dismiss, rejecting plaintiffs' argument that the City's notices were defective because they were given to the Debtor, an ineffective corporation, instead of 11 King. The court stated: "the

---

[2] Action #1 and Action #2 were consolidated by the State Court. Both of these actions were conducted by counsel located in Newburgh, NY.

6

fact that the corporation [the Debtor] was improperly named on the deed is of no moment since the deed could have been corrected and was not. The owner of record [the Debtor] received the requisite notice" … and "all proper procedures for notification and timing and method of notification were made by the City." *11 King Center Corp. v. City of Middletown*, Nos. 2785/2011, 9727/2011, 2012 WL 10996625 at *6 (N.Y. Sup., Orange Co. March 16, 2011). The court's decision, however, did not address Pfeifer's fraudulent conveyance cause of action.

21. On March 19, 2014, the Appellate Division, Second Department, affirmed the State Court's decision, but modified it to note that instead of dismissing the requests for declaratory relief and reformation of the deed, the State Court should have denied the requests for declaratory relief and "entered a judgment declaring that 11 King is not the owner of the subject property." *11 King Center Corp. v. City of Middletown*, 115 A.D. 3d 785, 786-87 (2nd Dept. 2014). The court also concluded that there was no scrivener's error because 11 King "did not exist at the time the deed allegedly intended to convey title to it was executed. Therefore, there was no basis to reform the deed to reflect that 11 King Center Corp. was the owner of the subject property…." *Id*. at 787.

22. On July 11, 2014, 11 King and Pfeifer moved for leave to appeal the Second Department's decision. Leave to appeal was denied by the New York Court of Appeals on September 18, 2014.

D.    **Events Leading To The Chapter 11 Filing**

23. Given the adverse decisions suffered in state court and the fact that the state courts have recognized that the Debtor and not 11 King is the owner of the Property, the only way for the Debtor to correct the manifest injustice caused by the City's seizure of the Property through an *in rem* foreclosure process (which did not require the

7

commencement of formal legal proceedings and a public auction sale) is to file for relief under chapter 11 of the Bankruptcy Code so the Debtor, an unincorporated company/business association, with all of the rights and powers of a trustee, may commence simultaneously or shortly after the chapter 11 filing a fraudulent conveyance action against the City to recover the Property or its value. Should the Debtor succeed, it will be able to file a plan and pay its creditors.

24. The Debtor's principal creditor is Pfeifer who is owed approximately $433,260.28 as of the Petition Date. Given the fact that the Debtor has no other source of revenue to finance the cost of the litigation and other expenses that will be incurred during the case, SBD Capital LLC, an entity in which Emerich Goldstein and Benjamin Goldstein (who are owners and officers of the Debtor) are principals, has agreed to make loans to the Debtor, subject to court approval on an unsecured basis to finance the costs incurred by the Debtor during the chapter 11 case.[3]

### III.
### INFORMATION REQUIRED BY LOCAL BANKRUPTCY RULE 1007-4

25. Local Bankruptcy Rule 1007-4 requires certain information related to the Debtor, which is set forth below.

26. In accordance with Local Bankruptcy Rule 1007-4(a)(i), the Debtor is a small business debtor within the meaning of Section 101(51D) of the Bankruptcy Code.

27. In accordance with Local Bankruptcy Rule 1007-4(a)(ii), the nature of the Debtor's business and the circumstances leading to the filing of this chapter 11 case are described in Section II of this Declaration.

28. Local Bankruptcy Rule 1007-4(a)(iii) does not apply to this case.

---

[3] SBD, a family investment vehicle, in the past made loans to 11 King to finance improvements and renovations to the Property, as well as other costs and expenses, including legal fees.

In accordance with Local Bankruptcy Rule 1007-4(a)(iv), no committee of creditors was organized prior to the filing of this case.

29. In accordance with Local Bankruptcy Rule 1007-4(a)(v), Schedule 1, which is attached, contains a list of the names and addresses of the creditors holding the twenty largest unsecured claims, excluding insiders, and where available, the name of the person familiar with the Debtor's account. This list also includes the amount of each claim, and if applicable, an indication whether the claim is contingent, unliquidated, disputed, or partially secured, subject to the Debtor's rights to dispute the actual validity of any claims.

30. In accordance with Local Bankruptcy Rule 1007-4(a)(vi), the Debtor has no secured creditors.

31. In accordance with Local Bankruptcy Rule 1007-4(a)(vii), Schedule 2, which is attached, provides a summary of the Debtor's assets and liabilities.

32. In accordance with Local Bankruptcy Rule 1007-4(a)(viii), the Debtor does not have any publicly held securities.

33. In accordance with Local Bankruptcy Rule 1007-4(a)(ix), there is no property in the possession or custody of any custodian, public officer, mortgagee, pledgee, assignee of rents, or secured creditor, or agent for any such entity, except that the City seized the Debtor's Property through an *in rem* tax foreclosure sale in satisfaction of an unpaid tax lien in the approximate amount of $31,730.28 by Quitclaim Deed dated October 22, 2010.

34. In accordance with Local Bankruptcy Rule 1007-4(a)(x), the Debtor does not lease or own premises from which it operates its business.

35. In accordance with Local Bankruptcy Rule 1007-4(a)(xi), the Debtor's most significant asset is its claim against Middletown for recovery of the Property or its value. The Debtor's books and records are located at 1 Rewe Street, Brooklyn, New York and at the offices or home office of Mendlowitz located at 4 Preshburg Blvd., Apt. 304, Monroe, NY 10950. The Debtor has no property outside territorial limits of the United States.

36. In the accordance with Local Bankruptcy Rule 1007-4(a)(xii), there are no pending or threatened actions or proceedings against the Debtor or its property where a judgment against the Debtor or a seizure of its property may be imminent.

37. In the accordance with Local Bankruptcy Rule 1007-4(a)(xiii), Schedule 3, which is attached, sets forth the names of the individuals who comprise the Debtor's existing senior management, a description of their tenure with the Debtor and a brief summary of their relevant responsibilities and experience.

38. In the accordance with Local Bankruptcy Rule 1007-4(a)(xiv), there will be no payroll and fees to be paid to employees (exclusive of officers, directors, stockholders, partners and members) for the thirty-day period following the filing of the Debtor's chapter 11 petition, as the Debtor has no employees. In accordance with Local Bankruptcy Rule 1007-4(a)(xv), there will be no payments to any officer, director or partner of the Debtor for the thirty-day period following the filing of the Debtor's chapter 11 petition.

39. In accordance with Local Bankruptcy Rule 1007-4(a)(xvi) there will be no estimated cash receipts and disbursements, net cash gain or loss, and unpaid obligations

and receivables expected to accrue but remain unpaid, other than professional fees, for the thirty-day period following the filing of the Debtor's chapter 11 petition.

## V.
## CONCLUSION

40. The primary purpose of the filing of this chapter 11 case is to correct the profound injustice suffered by the Debtor due to the City's seizure of the Property worth approximately $1 million in satisfaction of an unpaid tax lien in the amount of $31,730.28. Chapter 11 is the only vehicle left for the Debtor to set aside the constructively fraudulent *in rem* tax foreclosure sale which resulted in the City obtaining an enormous windfall at the Debtor's expense.

41. For the reasons described in this Declaration, I believe that the prospect for a successful reorganization can be achieved for the benefit of creditors and other stakeholders if the Debtor is given a sufficient amount of time to litigate the fraudulent conveyance action which will be commenced against the City either simultaneously with the commencement of this case or shortly thereafter.

I declare, pursuant to 26 U.S.C. § 1746, under penalty of perjury, that the foregoing is true and correct to the best of my information, knowledge and belief.

Dated: September 8, 2015.

BENJAMIN GOLDSTEIN

**SCHEDULE 1**

## LIST OF CREDITORS HOLDING TWENTY LARGEST UNSECURED CLAIMS

B 4 (Official Form 4) (12/07)

# UNITED STATES BANKRUPTCY COURT

Eastern District Of New York

In re King Center Corp., an unincorporated company/business association,　　　Case No. _____
　　　　　　　　　　　　　　　　Debtor,　　　　　　　　　　　　　　　　　　　　　Chapter 11

## LIST OF CREDITORS HOLDING 20 LARGEST UNSECURED CLAIMS

Following is the list of the debtor's creditors holding the 20 largest unsecured claims. The list is prepared in accordance with Fed. R. Bankr. P. 1007(d) for filing in this chapter 11 [*or* chapter 9] case. The list does not include (1) persons who come within the definition of "insider" set forth in 11 U.S.C. § 101, or (2) secured creditors unless the value of the collateral is such that the unsecured deficiency places the creditor among the holders of the 20 largest unsecured claims. If a minor child is one of the creditors holding the 20 largest unsecured claims, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m).

| (1) | (2) | (3) | (4) | (5) |
|---|---|---|---|---|
| Name of creditor and complete mailing address, including zip code | Name, telephone number and complete mailing address, including zip code, of employee, agent, or department of creditor familiar with claim who may be contacted | Nature of claim (trade debt, bank loan, government contract, etc.) | Indicate if claim is contingent, unliquidated, disputed or subject to setoff | Amount of claim [if secured also state value of security] |
| David Pfeifer | 106 Joseph Avenue Staten Island, NY 10314 | Loan | | $433,893.08 |

Date: September 8, 2015

_____
Benjamin Goldstein
Secretary-Treasurer of King Center Corp.

*[Declaration as in Form 2]*

{00375211.DOCX.4}

Official Form 2
6/90

## DECLARATION UNDER PENALTY OF PERJURY
## ON BEHALF OF A CORPORATION OR PARTNERSHIP

I, Benjamin Goldstein the Secretary-Treasurer of the entity named as the debtor in this case, declare under penalty of perjury that I have read the foregoing List *of the Debtor's Twenty Largest Unsecured Creditors* and that it is true and correct to the best of my information and belief.

Date: September 8, 2015

Signature _____

Benjamin Goldstein, Secretary-Treasurer
(Print Name and Title)

**SCHEDULE 2**

## SUMMARY OF DEBTOR'S ASSETS AND LIABILITIES

| Assets | Amount |
|---|---|
| Fraudulent Conveyance Claim Against City of Middletown, NY | $1,000,000.00 |

| Liabilities | |
|---|---|
| Unsecured Mortgage Loan | $433,893.08 |

{00375853.DOCX.2}

**SCHEDULE 3**

## DEBTOR'S SENIOR MANAGEMENT

Benjamin Goldstein: A Manager and the Secretary-Treasurer of the Debtor. He has been a 25% owner of the Debtor since 2005 and has extensive business and real estate investing experience. He and Emerich Goldstein will have overall responsibility for the Debtor's affairs and reorganization.

Emerich Goldstein: A manager and the President of the Debtor. He has been a 25% owner of the Debtor since 2005. He has extensive business and real estate investing experience. He and Benjamin Goldstein will have overall responsibility for the Debtor's affairs and reorganization.